By the Court, Bronson, J.
Trover will lie where thd goods have been lost to the owner by the act of the carrier* though there may have been no intentional wrong: as where the goods are by mistake, or under a forged order, delivered to the wrong person. (Youl v. Harbottle, Peake Cas. 49; Devereux v. Barclay, 2 Barn. & Ald. 702; Stephenson v. Hart, 4 Bing. 476 ; Lubbock v. Inglis, 1 Stark. R. 104.) But it will not lie for the mere omission of the carrier; as where the property has been stolen, or lost through his negligence, and so cannot be delivered to the owner. The remedy in such cases is assumpsit* or a special action on the case. (Anon. 2 Salk. 655 ; Ross v. Johnson, 5 Burr. 2825 ; and see Dewell v. Moxon, 1 Taunt. 391; 2 Saund. 47, f; McCombie v. Davies, 6 East, 538.) Mere nonfeasance does not work a conversion of the property; and although the owner may have another action, he cannot maintain trover. Here, the trunk was lost, and the plaintiff can only recover, if at all, upon the counts which charge the defendant as a carrier. A demand and refusal would not alter the case, for as the trunk was either stolen or lost the defendant could not deliver it. Demand and refusal are only evidence of a conversion where the defendant was in such a condition that he might have delivered the property if he would.
If the defendant was a common carrier of the lost trunk, it would then be important to inquire whether there was a complete delivery of the property to Mason at Poughkeepsie. If there was a full transfer from the custody of the boatmen to the charge of the owner, the defendant’s contract was performed, and he was no longer answerable for the property as a common carrier. But although the evidence tended pretty strongly to show á complete delivery, Í do not think it so conclusive as to warrant the judge in taking the question from the jury, if the cause turned upon that point. He undoubtedly went upon the ground that the defendant was not to be regarded as a common carrier of the trunk; and that is the principal question in the cause.
Although I do not find it stated in the case that Mason paid *589 any thing to the boat owner, either for freight or passage, yet the whole argument on both sides went upon the ground that he had paid the usual fare of a passenger, and nothing more: that he neither paid, nor intended to pay any thing for the trunk; but designed to have the same pass as his baggage. It was formerly held, that the owner of the boat or vehicle was not answerable as a carrier for the luggage of the passenger, unless a distinct price was paid for it. " But it is now held, that the carrying of the baggage is included in the principal contract in relation to the passenger; and the carrier is answerable for the loss of the property, although there was no separate agreement concerning it. A contract to carry the ordinary luggage of the passenger is implied from the usual course of the business; and the price paid for fare is considered as including a compensation for carrying the freight. But this implied undertaking has never been extended beyond ordinary baggage, or such things as a traveller usually carries with him for his personal convenience in the journey. It neither includes money, nor merchandize. (Orange Co. Bank v. Brown, 9 Wend. 85; Pardee v. Drew, 25 id. 459.) It was suggested in the first case that money to pay travelling expenses might perhaps be included. But that may, I think, be doubted. Men usually carry money to pay travelling expenses about their persons, and not in their trunks or boxes; and no contract can be implied beyond such things as are usually carried as baggage. It is going far enough to imply an agreement to carry freight of any kind from a contract to carry the passenger ; for the agreement which is implied is much more onerous than the one which is expressed. The carrier is only answerable for an injury to the passenger, where there has been some want of care or skill; but he must answer for the loss of the goods, though it happened without his fault. Still, an agreement to carry ordinary baggage may well he implied from the^ usual course of business ; but the implication cannot be extended a single step beyond such things as the traveller usually has with him as a part of his luggage. It is undoubtedly difficult to define with accuracy what shall be deemed baggage within *590 the rule of the carrier’s liability. I do not intend> to say that the articles must he such as every man deems essential to his comfort; for some men carry nothing, or very little with them when they travel, while others consult their convenience by carrying many things. Nor do I intend to say that the rule is confined to wearing apparel, brushes, razors, writing apparatus, and the like, which most persons deem indispensable. If one has books for his instruction or amusement by the way, or carries his gun or fishing tackle, they would undoubtedly fall within the term baggage, because they are usually carried as such. 'This is, I think, a good test for determining what things fall within the rule..
In this case the plaintiff sent out Mason as his “ traveller” or agent-to seek, purchasers for his goods, and the trunk in question contained samplés of the merchandize which he wished to sell. The samples were not carried for the personal use, convenience, instruction or amusement of the passenger in his journey ; hut for the purpose of enabling him to make bargains in the way of trade. Although the samples were not themselves to be sold, they were used for the sole purpose of carrying on traffic as a merchant. They were not baggage within the common acceptation of the term; and as they were not shipped or carried as freight, the judge was right in holding that the plaintiff could not recover.
New trial denied.