Ranney, J.
It is with much difficulty that this cause can be retained for decision in this court. The district court, to which it was submitted — a jury being waived — instead of finding the facts,, and then sending the questions of law arising here for determination, after hearing the evidence ordered it to be set out in the record, and the facts, as well as the law of the case, to be reserved.
It is not, however, open to the objection which availed to remand the case of Hubble v. Renick, 1 Ohio St. 171. In that case the reservation was ordered upon -the motion of one of the parties; and we held that the court could not, in that manner, compel the other party to submit the finding of the facts to the judges of this court. In this case the reservation is made upon the motion* of both parties; and, of course, both have waived that objection. But it is still open to the serious difficulty, that it requires us to settle facts before we can arrive at the questions of law involved; and is, so far, opposed to the spirit and policy of the act organizing this court, and to the objects and purposes for which it was created. We shall not, therefore, as a general rule, entertain jurisdiction of cases at law, upon reservation, even at the instance of both the parties, until the facts have been settled in the district court, either by an agreed statement, or a finding of the court or jury. We onlv depart from the rule in this instance because it has not hith *738, 739 erto been well understood, and because the facts in this case are of easy solution.
We have been wholly unsuccessful, after very careful research, in finding where it was even doubted that a ferryman, occupying *a position in a line of public travel, and holding himself out for general employment, was not a common carrier, and, as such, subject to all the liabilities incident to that position. That he is such is unqualifiedly asserted by the best text-writers, and enforced in a large number of decided cases. Angell on Carriers, secs. 82, 130; Story on Bailm., sec. 496; 2 Kent’s Com. 599; 3 Barr, 342; 5 Missouri, 30; 1 McCord, 444; 1 Nott & McCord, 19; 8 Ala. 96; 11 Leigh, 521; 12 Ill. 344; 10 M. & W. 161.
But if we were without direct authority, and compelled to rely upon the spirit of the law relating to common carriers, we should find ourselves unable to assign any sufficient reason for imposing a higher responsibility upon one carrying persons and property along a river, than were exacted of those engaged in carrying them across it. The employment of the latter is no less emphatically of a public character than that of the former; while every consideration of public policy is equally as applicable in the one case as in the other. Indeed, in one point of view, the argument is generally strongest against the ferryman. Most other channels of transportation by water are open to free competition, and those who employ the carriers upon them have an opportunity to choose who they will trust; but the ferryman is generally secured in the exclusive privilege of using the particular locality, and under terms to coerce employment from all those whose business or convenience requires them to cross at the particular place.
W e have been no more fortunate in finding any sufficient support for the position that the responsibilities of a common carrier, in respect to other pi’operty, do not attach to the carriage of living animals. No such distinction has anywhere been recognized. The contrary is expressly laid down by the elementary authors to which I have referred, as well as in several of the cases cited; to which may be added others. Angelí on Carriers, sec. 214; Story on Bailments, sec. 576; Stewart v. Crawley, 2 Stark. 323; Porterfield v. Brooks, 8 Humph. 497; Palmer v. Grand Junction Railway, 4 M. & Welsh. 749.
*The nearest approach to anything sustaining his position, which the learned counsel for the defendant has been able to pro *740 •duce, is Boyce v. Anderson, 2 Pet. 150; in which it was held, that the carriage of negro slaves did not impose upon the carrier the same responsibility as the transportation of inanimate matter. There can be no doubt of the correctness of this decision. The chief justice very conclusively shows that the carrier can not, consistent with humanity and regard to the life and health of the slave, have the same absolute control over an intelligent being endowed with feelings and volition, that he has over property placed in his custody ; and that such an undertaking was not to be distinguished from the ordinary one for the carriage of passengers. But these reasons can certainly have very little application to the transportation of brute animals, without judgment or intelligence to provide for their own safety, and which may, with suitable accommodations, be effectually secured and confined. This question has, within a few years, from the great numbers of domestic animals now carried from the west to the east, by land and water, assumed a very decided importance; but we can feel no hesitation in declaring that those who undertake their transportation, take upon themselves the obli.gation to deliver them safely, against all contingencies, except such •as would excuse for the non-delivery of other property. Neither of the late cases, of Willoughby v. Horridge, 16 Eng. L. & Eq. 437, and White v. Winnisimmet Company, 7 Cush. 155, are opposed to either of the propositions, which we have regarded as settled. In the last, and much the strongest for the defendant, the court, after .stating that the delivery of a bale of goods to a ferryman, to be transported, would impose upon him the strict liability to carry it ■safely, against all contingencies except .the act of God or the public enemies, proceed to say : “ The principle above stated, would embrace the case of a horse and wagon, received by a ferryman, to- be transported by him on a ferry-boat; the ferryman accepting the exclusive custody of the same for *such purpose, and the owner having, for the time being, surrendered the possession to the ferryman.” But it appeared, in that case, tliat the owner selected hia own place upon the boat, retained the exclusive custody of the horse and wagon, neither committing them to the custody of the ferryman, nor signifying a wish to do so, and that they were lost by his own carelessness. Without indorsing everything said in the opinion, we can not doubt that judgment was correctly given for the defendants. The rule which fixes the liability of common carriers, is, it is true, one of great rigor; and while it is equally true that tba *741 reasons upon which it was originally founded, have in a measure-ceased to be applicable, still others of greater cogency, growing out of the exigencies of modern commerce, have taken their place, and have made the continuance of the rule indispensable to the safety of the public, and every relaxation of it the subject of regret with the most enlightened judges. In my opinion, this court has gone quite far enough, in allowing the carrier, by special contract, to exempt himself from responsibility as an insurer for losses occasioned without fault on his part. Davidson v. Graham, 2 Ohio St. 131; Graham v. Davis, ante.
But while this strict liability of the carrier is necessary to the-public security, and, in our opinion, not to be relaxed, we are never to forget that he also has' rights which deserve to be scrupulously guarded. While the law holds him to the strictest accountability, it requires those who deal with him to act with the utmost good faith ; and if the loss can be traced to their fault, it is plain there can be no recovery. It is but the dictate of common honesty, that ho who delivers property to a carrier, knowing that it requires peculiar care and attention to its safe transportation, should make known to him the necessity, in order that the proper precaution may be used — Orange County Bank v. Brown, 9 Wend. 85 ; Pardee v. Drew, 25 Wend. 85 ; Miles v. Cattle, 6 Bing. 743 — although the principle has not been extended so far as to require a disclosure of the peculiar *value of the property, unless inquiry is made by the carrier. Sewall v. Allen, 6 Wend. 349; Hollister v. Nowlan, 19 Wend. 234; Phillips v. Earl, 8 Pick. 182 ; Sleat v. Flagg, 5 B. & Ald. 342.
It is upon a similar principle, of requiring good faith and reasonable diligence from the owner, in his dealings with the carrier, that it has been held, that if the owner of goods accompanies them to take care of them, and is himself guilty of negligence resulting in loss or injury, he is not entitled to recover. Brind v. Dale, 8 Car. & P. 207. Nor are we disposed to adopt the artificial reasoning of some of the cases, which makes the owner or his servant, in such case the servant of the carrier, and the latter responsible, notwithstanding the negligence of the former. It is 1he right of the owner to commit his property to the exclusive custody of the carrier, and the latter has no right to decline to receive it; but if the owner sees fit to take upon himself any duty connected with the carriage, he does not lose his position as an in *742 dependent party to the contract, and is bound to discharge it with, fidelity. But this rule, in its application to the undertakings of a ferryman, is not to be received in too broad a sense. The'very nature of his employment requires him to transport all sorts of persons, many of whom would be wholly incapable of furnishing: assistance, and most of -whom must be very imperfectly acquainted, with the precautions necessary to the safety of the horses they drive. He would have no right to place any reliance upon an infirm man, a woman, or a child, to manage a frightened horse, which it would require a strong man, with presence of mind, to> do; and, in any case, all that he could require would be that the party should have attempted to perform, in good faith, what he had voluntarily assumed. That everything was not done that skill or prudence could have suggested, can never be made an objection to a recovery.
To bring himself within the purview of these limitations upon the carrier’s liability, the defendant insists that one of the horses-*lost was particularly vicious, and had been frightened, shortly before coming upon the boat, by a train of cars ; that these-facts should, in good faith, have been communicated to the defendant; and that the plaintiff did not, in all respects, conduct himself properly at the time the accident happened. In our opinion, no-part of this claim is sustained by the evidence. There is nothing' to show that the horse was vicious. The greatest sin proved upon him is, that he was spirited ; and while it is true that he had been somewhat frightened in the manner stated, some time before going upon the boat, the fact that he had stood in the street, alone, and without being hitched, for half an hour afterward, effectually -removes all imputation of bad faith from the plaintiff, for not mentioning a circumstance which he must have considered of no importance. We are at a loss to know what more the plaintiff could have done, at the time of the accident, than he did do. The defendant placed the team upon the boat, and then went on shore,, leaving only the oarsman, and a boy to act as engineer, to manage it. They did not, and probably could not, leave their positions; and the plaintiff, having no assistance but another passenger, seems to have.exerted all his power to prevent the team from going-off the boat. We see nothing in his conduct, or the law of the-case, to bar a recovery.
2. But if we had taken a different view of the legal questions- *743 ¡fixing the defendant’s liability, we should still be brought to the .same judgment. It is conceded that he must have furnished a .strong, safe, well-built boat, and have managed it with care and prudence, and that even slight neglect would charge him. And it is further admitted, that this boat was wholly unprovided with either bars, gates, or chains at the ends, to prevent the escapo of horses from it. As to the necessity for these precautions, there is a conflict in the evidence — the greatest number of witnesses, perhaps, expressing the opinion that they are not necessary. But this •does not relieve us from the obligation of scrutinizing the grounds upon which these opinions are based. Now, as a matter *of •common sense and every-day experience, we do know that a large proportion of the horses transported are unaccustomed to the noise ■of a steam-engine; and equally well, that more or less of them will become restive when they hear it, and that the difficulty of restraining them will be greatly increased when, as in this instance, .a number aro hitched together. Under such circumstances, to place a team on board, with no assistance provided in case of fright — the ends of the boat being entirely .open, and with a projecting “ apron,” just sufficient to allure the horses upon it, but in•sufficient to hold them — we can not regard as an exercise of that scrupulous care which it is conceded the defendant was bound to ■exercise. It is not enough that this and other ferries may, for a considerable time, have carried horses safely without these precautions. If, for the want of them, losses should occur but seldom, they are still such as might be readily anticipated, and easily provided against.
There must be judgment for the plaintiffs.