By the Court—Slosson, J.
The question is no longer an open one in this State, whether a common carrier can, by a mere notice, though brought home to the owner of goods, limit his common law liability. Although it was at one time held that he could, it is now abundantly settled that he cannot, and the rule is not confined to the case in which the carrier attempts to excuse himself by notice from all liability whatever, but includes a partial/ limitation also, so that the proposition may be considered nq longer a debatable one, that the carrier cannot limit his liability) either in part or whole, by mere notice, though the notice bp proved to have been brought to the knowledge of the owner.
On the other hand, it is equally well settled, though this was formerly doubted, that he may limit his liability, in whole or in part, by express contract. (Orange Co. Bank v. Brown, 9 Wend., 85; Hollister v. Nowlen, 19 id., 234; Cole v. Goodwin, id., 251; Merc. Ins. Co. v. Chase, 1 E. D. Smith, 115; Dorr v. N. J. Steam Nav. Co., 1 Kern., 485.)
We do not by this intend to say that the carrier is not at liberty to prescribe reasonable rules and regulations for the conduct of his business, to which the owner of goods or the passenger will be subject, or that a notice of such rules and regulations, involving by their terms even a limitation of his common law liability, may not be so communicated to the traveler as under circumstances to justify the conclusion that he assents to them.
On the contrary, it may well be that a special contract may be predicated on the circumstances under which a notice is brought home to a party, but the circumstances must be such as would justify the conclusion, not merely that the party has knowledge of the notice and its contents, but that he assents to its terms and conditions.
The defendants rely upon the memorandum contained in the ticket received by the plaintiff at Boston, as constituting a special contract with the plaintiff, limiting their liability for baggage to $100 in value. It is impossible to hold this.
*234 We cannot, on principle, regard such a memorandum, or any memorandum, on a passenger’s ticket, as constituting a contract between the carrier and the passenger.
These tickets are usually received and paid for in the bustle of a crowd, and it is unreasonable to suppose that the passenger reads and assents to the terms of a memorandum printed thereon; besides they are surrendered to the conductor of the cars or collector on the boat. If contracts, the plaintiff would be entitled to retain them as evidence of his right, as in the case of a bill of lading, until the safe delivery of his baggage. Such tickets are rather tokens or evidences of the right of the passengers to a seat in the cars or accommodation on the boat, from the fact of having paid the fare, and they have fulfilled all their purpose when that right is admitted by the call for and surrender of the tickets. (Quimby v. Vanderbilt, 17 N. Y. R., 306.)
The utmost that can be claimed for this memorandum is that it was a notice, and as such, even if it be admitted that the plaintiff read it, of which there is no proof, it could not, for anything that appears in this case, create a contract with him.
The price paid for his fare by the plaintiff included the price of the transportation of his baggage.
It is somewhat difficult to define the limit, as to value, within which the liability of the carrier for baggage is to be confined.
The Judge told the jury that “ the plaintiff was entitled to recover his reasonable personal baggage,” and that in considering what amount of baggage the plaintiff might reasonably have had they might take into consideration “his residence, business and station in life, and the place from which he came, and whither he was going.” The plaintiff was a commission merchant, and had just returned from Europe, and was on his way to Hew Orleans, where he resided.
In Hawkins v. Hoffman, (6 Hill’s R., 589,) the Court say that the implied undertaking to carry baggage “ has never been extended beyond ordinary baggage, or such things as a traveler usually carries with him for his personal convenience on the journey, and that the implication cannot be extended beyond such things as the traveller usually has with him as a part of his luggage.”
The Court admitted the difficulty of defining what precise articles were within the rule, since some men carry scarcely any *235 luggage at all, while others take with them a great variety of articles for their convenience; that the articles to be allowed were not to be confined to wearing apparel, and other things usually deemed indispensible, but might well include books carried for instruction or amusement, a gun, or fishing tackle, as such articles are usually carried as baggage.
We understand the rule to be, that the jury, in determining' what baggage a traveler is entitled to recover from the carrier in t case of loss, may take into consideration what he has been in the \ habit of carrying in his travels for his personal convenience or \ use within a Reasonable limit, or what a person so circumstanced f is ordinarily in the habit of carrying. It is a question for the jury to decide, under all the circumstances.
The Judge instructed the jury that the plaintiff was not entitled to recover presents intended for friends, nor the silver match box, unless the jury believed it to be reasonable personal baggage, nor the masonic regalia, nor the engravings, nor presents received from friends, the particulars of which he could not give.
The plaintiff’s counsel insists that none of the articles excluded by the Judge were properly so excluded. We think the Judge ruled correctly as to these articles. It would be difficult to include them within any definition of baggage contained in the books. They certainly are not articles intended for the personal convenience of the traveler, and if presents received by him, the particulars of which he cannot give, and which may therefore be supposed not to have been used on his person, or intended for personal convenience or use, or presents intended by him for his friends, were admitted, it would be almost impossible to lay down any rule of limitation, either as to quantity or value.
As to the masonic regalia and jewels, it is clear that they were properly excluded.
The plaintiff has no reason to complain; after deducting all the items excluded by the Judge, and the articles mentioned in the inventory, which are admitted by the plaintiff to have been recovered back before this suit was brought, the verdict is still $70 more than it should have been. The mistake is doubtless owing to an inadvertence, and were we at liberty to do so, we should direct the verdict to be corrected as it ought to be, but the case does not show that a motion for a new trial was made *236 at the Special Term, and the appeal to us is from the judgment' only. On such an appeal we can only look into the exceptions taken on the trial, and not into the question whether the verdict is sustained in whole or in part by the evidence.
The exception by the defendants’ counsel to the Judge’s charge is “ to all and every part ” of it, except that in which he denied the plaintiff’s right to recover certain articles.
The exception is too broad. It is abundantly settled that under a general exception to a charge, if any portion of it be correct, the exception must fail. We shall therefore refrain from express ing any opinion on the question of the correctness of the charge, in respect to the plaintiff’s negligence, of which a point was made on the argument, or whether the Judge did or did not properly take that question from the jury, though in saying this we do not intend to intimate any doubt as to the propriety of his so doing, under the admitted facts of the case.
For the like reason, we do not deem it necessary to say whether we should or should not wholly coincide in some of the considerations which the Judge submitted to the jury as their guide in determining what was a reasonable amount of baggage for the loss of which the passenger might hold the carrier. A point was made of this on the argument, but abandoned by counsel as not of sufficient importance to incumber the case.
Upon the exceptions properly before us, we are of opinion that the judgment should be affirmed, with costs.
Woodruff, J.
(1.) Without denying the rule that a common carrier cannot relieve himself from the responsibilities which the common law imposes upon him as a common carrier, by merely giving notice that he will not be so liable, I desire, in order to avoid misapprehension, to say that, in my judgment, the common law does not prescribe the rates or prices, or terms and conditions under which the carrier shall perform his services otherwise than that he shall carry the passenger and his baggage at a reasonable price and under regulations respecting the manner in which the business shall be done which are themselves reasonable. And the law does not .forbid the carrier’s prescribing regulations designed to protect him against unusual hazards or against imposition or fraud, nor forbid his requiring the payment of rates of *237 passage varying according to the varying magnitude of the risks he assumes.
I know of no rule of law which prevents a carrier from prescribing to passengers a tariff of prices, according to which he will charge to the passenger who has no baggage a specific sum; to the passenger who carries baggage of the value of $100 an additional amount; to the passenger who carries baggage of the value of $500 a further sum, and so on, increasing the price for passage according to the increase in the value of the service and the hazards of loss. The only limitation of this right is the requirement that the charges be justly and reasonably proportioned to the varying value of the actual service rendered and to the risk incurred. And when it is said that the carrier receives compensation for carrying the traveler’s baggage in the price charged for passage money, this is not a denial of the carrier’s right to discriminate, and if he please, consent to carry passengers who have no baggage for a less compensation than he charges passengers with baggage; nor when it is said that the carrier who receives passage money is responsible for the safe carriage and delivery of a reasonable amount of baggage, does this proposition deny the right of the carrier to graduate his charges with reference to the actual value of the property the carriage and safety of which he insures.
Whether the carriage be by railroad or otherwise, it is obvious that carrying ' the baggage of the passengers necessarily involves an expense and risk greater or less in proportion to the quantity, and value which each passenger has. Labor, baggage cars, and the watchfulness and care requisite to the secure preservation of the property are proper subjects of compensation, and are obviously an addition to the labor and expense of carrying the person of the passenger only. The duty to carry safely involves the duty to provide secure places for the transportation and proper watchfulness and safeguards to prevent loss. These are proportioned to the value at stake and the consequent hazard, and the right to require a disclosure of the value of the goods and a proper rate of compensation obviously follows from these duties.
But the recognition of the legal right of the carrier to make the discrimination above intimated comes far short of sustaining the claim of the defendants in this case, to be exonerated on the *238 ground that they placed on ttie passage ticket the notice given in evidence in this case.
Assuming the discrimination in respect to rates of charge to be just- and reasonable, I cannot doubt that an established, uniform and notorious usage of business, or an actual notice brought home to the passenger in such form as to call upon him in fairness to the carrier to disclose, when he applies for passage and pays his fare, how much baggage he wishes him to carry and insure, or in which class of passengers he desires to be ranked and charged, would entitle the carrier to exoneration from any greater liability than such as corresponds with the classification which he has established.
Whether when the baggage is delivered the passenger’s attention should be called to the regulation and inquiry be made respecting its value; or whether, if not at that time, it should be done on the application of the passenger for his ticket and tender of his passage money, or in what precise mode a railroad company may so conduct its business as to make it the duty of the passenger to disclose the value of his baggage and pay accordingly, it is not necessary in this case to say. Frankness, fair dealing, and a clear opportunity to act intelligently on both sides are undoubtedly reciprocally due.
' When proper notice of such a regulation is given so that the passenger is apprised thereof, or when from the uniform and notorious usage of business, he is chargeable with such notice, it is reasonable and just that he be held bound thereby: and that the carrier may require a disclosure of contents and value and charge accordingly, is not, I apprehend, doubtful, whether he be a carrier of goods or of passengers with their trunks. (See cases cited in Cole v. Goodwin, 19 Wend., 270; Orange Co. Bank v. Brown, 9 id., 114; Wyld v. Pickford, 8 Mees. & Wels., 443; Batson v. Donovan, 4 Barn. & Ald., 21; Clay v. Willan, 1 H. Black, 298; Izett v. Mountain, 4 East., 370; Mercantile Ins. Co. v. Chase, 1 E. D. Smith, 115, and cases cited; Stanton v. Leland, 4 id., 93, &c.; Holford v. Adams, 2 Duer, 471.)
I concur with my brethren in the opinion that the defendants here, having received the plaintiff’s trunks, without inquiry, objection or condition, and placed them in their baggage car, and having afterwards accepted his passage money without inquiry *239 or condition, were not exonerated from responsibility for such property as properly falls within the denomination of a traveler’s baggage by the mere fact that the indorsement on the ticket which they delivered to the plaintiff stated that “ passengers are not allowed to carry baggage beyond $100 in value, and that personal, unless notice is given and an extra amount paid at the rate of the price of a ticket for every $500 in value.”
Hothing was done before or at the time when the trunks were offered to the defendants, or when the plaintiff tendered his fare, which by actual communication to him, gave him notice of any such price or condition upon which the defendants would carry him and his trunks, nor was there evidence of any other facts which can be said to have made it his duty to state the value or contents of his trunks and pay accordingly.
(2.) It seems to me proper also, to observe that so far as the charge to the jury seems to indicate that in determining for what amount of baggage the defendants were responsible the jury might take into consideration the plaintiff’s residence, business, station in life, the place from which he came and whither he was going, and whether he was a. poor man or a rich man, or where he had been traveling, the charge was not free from exception. If the liability of the defendants depended in any degree upon such considerations, it should appear that they had knowledge of these facts, or some means of knowledge, when they undertook to carry the plaintiff. But I am apprehensive that these considerations do not affect the extent of liability. If travelers practice no fraud or disguise; one may carry as much baggage as another. What is reasonable baggage may be determined independent of any such criteria; and if the claimant have that and no more the carrier is responsible for that, whether the passenger be rich or have no other worldly possessions than his traveling baggage, and whether he have traveled in Europe, or is making his first journey from the most humble birthplace.
On the other hand, if the evidence respecting the actual contents of the traveler’s trunks be contradictory and doubtful, considerations showing that his claim to a very valuable outfit was improbable, and tending to impair confidence in his testimony, might perhaps arise out of proof that he was poor, and that the articles claimed were wholly unsuited to his condition *240 in life or his previous history, and so tend to the belief that his claim was exaggerated in respect to the amount and value of the contents of his trunk. In this construction of the charge, (if it bear that interpretation,) doubtless the considerations to which the attention of the jury was called would not be irrelevant.
Upon this branch of the case, however, my concurrence rests upon the generality of the exception taken to the charge, and on that ground I concur in the affirmance of the judgment.
. Judgment affirmed, with costs.