## SMITH v. BOSTON AND MAINE RAILROAD.

The ticket of a passenger includes also the ordinary baggage required for his personal accommodation upon his journey, but does not include merchandise.

Therefore, a common carrier of passengers is not an insurer of such merchandise, when taken along by the passenger, unless a reward be given for its transportation, or it be of a character which, by usage or contract, is to be regarded as part of the baggage.

The fact that other passengers, on other occasions, had taken along with them in the passenger cars similar bundles of merchandise, without objection, has no legal tendency to prove that the bundle in question was transported at the risk of the carrier, unless it were shown that such bundles were knowingly carried as part of the baggage, and paid for by the passenger ticket.

Although the carrier in such case is not liable as an insurer, he is liable as a bailee without reward, for loss or injury caused by his gross negligence; but such negligence must be proved, and is not to be presumed from the mere fact of the loss.

In a suit, by husband and wife, for the loss of merchandise of the wife before marriage, she is not a competent witness for the plaintiffs, nor is her competency affected by the statute which removes the objection of interest.

CASE.    The declaration has five counts.    The first alleges that the defendants, as carriers of passengers and their luggage, on the 30th day of April, 1859, received Julia A. Smith as a passenger,

with a certain bundle containing the cloth, trimmings and materials for six coats, to be carried from Newmarket to Dover for a reasonable hire and reward, and that the bundle and contents were not so delivered, but lost.

The second, third and fourth counts allege that the defendants received said bundle and contents as common carriers, &c. The fifth count charges the defendants as depositaries only.

The writ is dated April 7, 1860, and the trial was had upon the general issue. The plaintiffs, Charles and Julia A. Smith, are husband and wife. Julia A. Smith was offered as a witness, and objected to by the defendants, on the ground of a wife's incompetency to testify as a witness in a case where her husband is a party. Her testimony was admitted by the court, subject to the exception of the defendants.

It appeared in evidence that the goods in question were taken by the said Julia, on the morning of the 30th day of April, 1859, from the store of Joseph Pinkham, in Newmarket, to be carried by said Julia to Dover, where she resided, to be by her manufactured; that this bundle, together with the trunk of said Julia, was taken by a hackman to Newmarket depot, and just before the cars arrived was seen upon the platform where baggage to go upon the train is usually deposited, marked " 23," the mark the company's baggage-master puts upon baggage to be left at the Dover station; that said Julia purchased a ticket for Dover, and with a band-box took passage in the same train of cars, arrived at Dover, and immediately went for her baggage, and found the trunk, but not the bundle; that she then informed the baggage-master and station-agent at Dover and Newmarket of the loss of the bundle; that due search was made for it by the company's servants, and it was never found; that the coats were rolled two together, each roll being fourteen to sixteen inches long, and five to six inches through, and the three rolls tied up in a cloth, the corners of which were brought together and tied across the package, and its edges "catched," or sewed together, so as to hide the contents of the bundle, the whole weighing twenty or twenty-five pounds. It also appeared that at the time of her taking passage on the train said Julia gave no notice of her having any other than personal baggage, and that she was at the depot ten or fifteen minutes before the train came.

The company's station-agent at Newmarket, who, on the 30th of April, 1859, acted as baggage-master at the depot, testified that he had seen many cases and packages of coats; that cases and packages of coats were carried on the freight trains every day; that such bundles are not received at Newmarket as baggage of passengers, but they are marked, and passengers allowed to take them along with them at their own risk; that notices to that effect are given to passengers, if any question arises, or they are supposed not to know the company's regulations; that such bundles, boxes of shoes, and bundles of every description, are transported on passenger trains, at the risk of the owner, without objection or extra charge; that the company never objects to receiving them to a reasonable amount; that is, a passenger can carry in the neighborhood of eighty pounds.

Other witnesses testified to taking such and similar bundles over the road, on passenger trains, and never heard any objection, and that they had seen others do the same.

The defendants, subject to the plaintiffs' exception, introduced a large poster, near the bottom of which was printed the following:

"Passengers are not allowed to carry baggage above $50 in value, nor over eighty pounds in weight, and that personal, unless notice is given, and an extra amount paid, at the rate of the price of a ticket for every $500 additional value."

It appeared that these posters were, on the 30th of April, 1859, and long before, in each of the ladies' and gentlemen's rooms, and in the common entry to the same, at Newmarket depot; also in several places in the depot at Dover, and at other stations on the road.

The following were also introduced by the defendants, subject to the plaintiffs' exception: namely,

Their freight tariff, upon which was printed,

"No single article of freight will be taken for less than twenty-five cents."

It appeared that this was posted up in the freight houses at Dover, Newmarket, and all the stations on the road.

Also a large card, nine by ten inches, containing the following, in large type:

"NOTICE TO PASSENGERS AND OTHERS, ABOUT BAGGAGE.

"1. You are hereby notified that the only kind of baggage for which this railroad will hold itself liable, is that which is strictly personal, and accompanied in the train by the owner.     *     *     *

"2. No person in the service of the Boston & Maine Railroad is authorized by said railroad to take or send by passenger trains any goods, merchandise, or other articles (excepting strictly personal baggage, accompanied by the owner), and any such articles which may be taken or sent, are, and must be, entirely at the risk of the owner.

"3. At the July term, 1851, of the Supreme Court of New-Hampshire, in the case of *Elkins* v. *Boston & Maine Railroad*, it was decided that railroads are not common carriers of goods and merchandise by their passenger trains, unless they expressly hold themselves out as such.

"This railroad gives renewed notice that they are not common carriers of goods by their passenger trains, and any articles which may be sent or taken by such trains, are, and must be, entirely at the risk of the owners."

These cards had for years been posted at different places in the depots on the line of the road, and especially in the depot at Dover.

Also a small card, two inches by three, having printed upon it the same notice above quoted from the large card; one of which small cards, at the time alleged, and for a long time before, was posted in the entry of the Newmarket depot, opposite the outside door, and directly in front of any one entering that door; the entry is about four by six feet, and the ladies and gentlemen turned to the right and left in this entry, to go to their respective rooms

on either side of it; another of these cards was also posted in the gentlemen's room in Newmarket, and one on the door of the baggage-room in Dover; these cards were always in the possession of the station-agents and baggage-masters at the different stations, with directions to give them to passengers whenever any question arose in regard to baggage, or whenever any person was supposed to be ignorant of the regulations, and they were very often so given.

A specimen of the only passenger tickets in use on the railroad on April 30, 1859, and before that time, since 1854, was put in evidence. On the face is printed:

"NEW MARKET."

"DOVER."

"TURN OVER."

and on the other side:

"NOTICE.

"Passengers are not allowed to carry baggage beyond $50 in value, and that personal, unless notice is given and an extra amount paid, at the rate of the price of a ticket for every $500 additional value."

The defendants also showed that at the time of the alleged loss, and long before, they ran a freight train over their road each way every day, and carried therein merchandise of every description; that there are end doors and side doors to the baggage cars; that the end doors swing on hinges; the side doors slide, and are secured by a latch on the inside, which fastens itself; that these doors are always closed between the stations; that the baggage for each station is selected between stations, and is usually passed out at the station by the baggage-master of the train; that it was the instruction of the road and the practice of their servants not to allow passengers to ride in the baggage-car; that there was no smoking-car then in the train, and that the baggage-master remains in the baggage-car all the time while the train is in motion.

The defendants' station-agent at Dover testified that passengers, having such bundles of merchandise as this in question, frequently apply to him for their carriage; that he invariably notifies them that the railroad carry on the passenger train nothing but personal baggage, and that any other is at the passenger's risk.

The baggage-master of the defendants at Dover testified that whenever he put merchandise upon passenger trains he always informed the owner that the company would not be responsible for its safety, and that it was carried at the owner's risk.

Mrs. Smith testified that she had frequently been in the depots at Dover and Newmarket, and often rode over the defendants' road prior to April 30, 1859; that she generally bought tickets, and did not recollect whether she ever read them or not, and could not say that she had not read them all; that she had no recollection of ever having seen the notices or cards, and had no notice of any limitation of the company's liability for merchandise or baggage.

The writ, the posters, cards, tickets, &c., herein referred to, were used in the argument.

A verdict was taken, by consent, for the plaintiffs, and the questions transferred.

*Wheeler & Hall*, for the plaintiffs.

Julia A. Smith was allowed to testify, on the ground that the cause of action arose before her intermarriage with Charles Smith, the other plaintiff.

The case finds, substantially, that the defendants were common carriers of such property as that lost by their passenger trains. Witnesses testified to taking such and similar bundles over the road, on passenger trains, and never heard any objection, and that they had seen others do the same. It was the custom of the defendants. The cases cited by the defendants only hold that one or two instances of such carriage will not suffice to fix the liability of common carriers. The defendants' notices and tickets, even if brought to every passenger's knowledge, would not restrict their common law liability. Their daily practice, as proved on trial, is a waiver in the plaintiffs' favor. The liability as a common carrier may be implied by the custom of the carrier. *Verner* v. *Sweitzer*, 32 Penn. 208. The defendants, in order to limit their responsibility as carriers, must show the plaintiffs fully informed of the terms of such limitations, and the conditions upon which they received baggage and merchandise for transportation. This they have failed to do. The notices, rules and tickets, introduced in evidence by them, would have raised no legal presumption of notice to the plaintiffs, even had not Julia A. Smith distinctly testified to want of notice. *Brown* v. *Eastern Railroad*, 11 Cush. 97; *Camden & Amboy Railroad* v. *Baldauff*, 4 Harris 67; *Butler* v. *Heane*, 2 Camp. 415; *Davis* v. *Willan*, 2 Stark. 279; *Kerr* v. *Willan*, 1 Holt 643; *Mackin* v. *Waterhouse*, 5 Bing. 212.

The bundle lost was received and marked by the defendants. It was in their possession as much as any baggage ever received by them. The manner of the loss by the defendants is in no way accounted for; hence they are liable for gross neglect, as depositaries. The principle is well settled, that a carrier can not, by special notices brought to the knowledge of the owner, or by contract even, exempt himself from the duty to exercise ordinary care and prudence in the transportation of freight and baggage. *Sager* v. *Railroad*, 31 Me. 228; *Laing* v. *Colder*, 8 Barr 479; *Bingham* v. *Rogers*, 6 W. & Serg. 500. See, also, *Baldauff* v. *Camden & Amboy Railroad*, 16 Penn. 67, and cited in note to Redfield on Railways, (2d ed.) 275, which is directly in point. The company advertised that they would carry fifty pounds of baggage for each passenger, and that passengers are expressly prohibited from taking any thing as baggage but their wearing apparel, which will be at the risk of the owner. The plaintiff had, in a trunk with his ordinary baggage, two thousand one hundred and one five franc pieces. The trunk was lost. The court held the company liable on two grounds: (1) They have failed to show the manner of the loss, and the law pre-

XLIV.        22

sumes negligence from the loss. (2) They have failed to show that the contents of their notice came to the knowledge of the plaintiff, which leaves them liable as insurers at common law.

*Christie & Kingman,* for the defendants.

1. The defendants are not common carriers of merchandise by their passenger trains. *Elkins* v. *Railroad*, 23 N. H. 275; 29 N. H. 42.

2. The goods lost were not personal baggage, but merchandise. Redfield on Railways 312, and cases; Ang. on Carriers 115, and cases.

3. No notice of the contents of the package was given the company, and nothing paid for its transportation. Redfield on Railways 312.

4. The defendants having permitted passengers to take such bundles along with them in the passenger cars, "without objection or extra charge," will not thereby subject themselves to the liabilities of common carriers. They are not thus carriers for hire. Story Bail. 322.

5. The defendants can not be charged as depositaries, for no gross neglect is shown on their part, nor is it shown that the goods ever came into their possession. They may have been stolen after the hackman left them. Ang. on Carriers 114; 27 N. H. 86.

6. It would be a matter of great inconvenience to the public to compel all railroads to enforce the rule strictly against carrying small packages of goods in the passenger cars, when the passenger goes with them.

BELLOWS, J. Laying out of consideration, for the present, the evidence of usage and of the limitations upon the defendants' responsibility, it may be assumed that the corporation is to be treated as a common carrier for hire, of passengers and their baggage, by its passenger train, and as such, in respect to the baggage, is subject to the common law liability of carriers of goods and merchandise; which makes them insurers against every thing but the act of God and the public enemies. Until a comparatively recent period the English courts were inclined to hold that carriers of passengers by stage coaches, and otherwise, were not liable for injuries to their baggage, unless a distinct price was paid for its transportation. *Middleton* v. *Fowler*, 1 Salk. 282, by *Holt*, C. J., and cases cited. But now it is well settled that the price paid for the passenger includes also the ordinary baggage required for his personal accommodation; the custody of the baggage being regarded as accessory to the principal contract. Ang. on Carriers, secs. 107, 116, and cases cited; *Brook* v. *Pickwick*, 4 Bing. 218; *Hawkins* v. *Hoffman*, 6 Hill 586; *Pardee* v. *Drew*, 25 Wend. 458; *Orange County Bank* v. *Brown*, 9 Wend. 85; Chit. on Con. (9 Am. ed.) 508, n.; 2 Kent Com. 601, 850; *New-Jersey Steam Navigation Company* v. *Merchants' Bank*, 6 How. 410, 417; *Russell* v. *Dutton*, 10 N. H. 481; 2 Greenl. Ev., sec. 221, and note 2; *Collins* v. *Boston & Montreal Railroad*, 10 Cush. 506.

The question then is, what shall be regarded as the ordinary personal baggage of the passenger? In general terms it may include, not only his personal apparel, but other conveniences for the journey, such as a passenger usually has with him for his personal accommodation. For that amount of freight it may well be assumed that in the price of the passenger ticket the carrier has received a compensation, but no such assumption can be made in respect to merchandise which has no relation to the personal convenience of the traveler upon his journey; and it has accordingly been held that the carrier of passengers is not liable for the loss of samples of merchandise which the passenger wished to sell. *Hawkins* v. *Hoffman*, 6 Hill 586. Nor of a trunk containing a large sum of money, namely, $11,250, as in *Orange County Bank* v. *Brown*, 9 Wend. 85. Or a trunk of merchandise, and nothing else, as in *Pardee* v. *Drew*, 25 Wend. 459. See, also, Redfield on Railways 312, 313, and notes; Ang. on Carriers, secs. 115, 116; Chitty on Cont. 426, 436, and notes; *Jordan* v. *Fall River Railroad*, 5 Cush. 69, where the authorities are examined, and it is decided that a carrier is liable for the loss of money *bonâ fide* included in the passenger's baggage, for traveling expenses and personal use, to a reasonable amount. And it is laid down in general terms that the baggage includes such articles as are of necessity or convenience for personal use, and such as it is usual for persons traveling to take with them, but not merchandise.

The principle to be extracted from the cases very clearly excludes merchandise, as such, in the idea of baggage for which the carrier is responsible, and therefore, unless it is paid for otherwise than in the price of the passenger ticket, the carrier is not liable for its loss unless caused by his negligence. Of course it is not meant that compensation for the freight should actually have been paid; but to make the common carrier an insurer of the goods, it is essential that the goods be carried for a reward, and, therefore, if the owner undertake to carry merchandise in the character of baggage, or to conceal money in other parcels, and thus to deprive the carrier of his just compensation, such merchandise or money must be at his own risk, unless lost or injured by the wrongful act of the carrier; because they are carried without that reward which is the foundation of the carrier's contract to insure, and which ought in justice to be in proportion to the risk. *Gibbon* v. *Paynter*, 4 Burr. 2298, and *Patson* v. *Donovan*, 4 B. & Ald. 340.

Applying these principles to the case before us, the lost bundle can not be regarded as part of the baggage of the plaintiff, Julia A. Smith, in a sense which implies that it was paid for in the price of her passenger ticket. Unless, then, there was evidence from which the jury might have found an agreement that such merchandise should be regarded as part of her baggage, and at the defendants' risk, there being no evidence otherwise of any payment or agreement to pay freight upon it, the defendant can not be charged, as an insurer, for its loss.

Upon a careful examination of the case we find no evidence tend-

ing to enlarge or alter the defendants' liability at common law, or in any way to vary the contract which the law implies.

The evidence that other passengers took with them similar bundles of merchandise over this railroad, and without objection, has no legal tendency to prove an agreement that they were to be regarded as part of their baggage, and paid for by their passenger ticket, or that they went at the risk of the corporation. If it were shown that, by the rules of the corporation, the price of a passenger ticket included the conveyance of baggage by the same passenger train, of eighty pounds weight, and that merchandise might be received to make up that weight, then it must be held that such merchandise was carried for a reward, and the corporation would stand as an insurer. The existence of such a rule might be shown by vote of the corporation, by notices posted along the line of the road, and also by usage; but that usage should be such as to show that the merchandise was carried as part of the baggage, and at the carrier's risk. It would not be enough to prove simply that such merchandise was carried, and without objection, for there would still be wanting the proof of the reward. At common law such merchandise is no part of the baggage, and if taken along by the passenger it is at his own risk; and we think that the repetition of such an act as stated in the case would have no legal tendency to prove a change in the carrier's contract, and make him an insurer of such merchandise.

The evidence of the station agent at Newmarket tended to show that persons were often allowed to take with them in passenger trains similar bundles without objection, but at their own risk; and beyond this, apart from the notices restricting the liability of the company to personal baggage, there was no evidence, except that other witnesses testified to taking similar bundles on the passenger trains, and never heard any objection; and also that they had seen others do the same; and this we think was wholly insufficient, even if it had been shown that the corporation had knowledge that these bundles contained merchandise. The case of *Elkins* v. *The Boston & Maine Railroad*, 23 N. H. 286, is strongly in point; and so is *Murch* v. *Concord Railroad*, 29 N. H. 41, 42, where the court directed a verdict for the defendants; and it was held that evidence that the road had "been in the habit, occasionally, of transporting some passengers upon the freight trains, when they were anxious to go," would not justify the holding that the corporation was a common carrier of passengers upon its freight trains. So, also, is *Sheldon* v. *Robinson*, 7 N. H. 164.

Our conclusion, then, is, that there was no evidence that the defendant corporation was a common carrier of merchandise by its passenger trains, or held itself out as such to the public. It is true that small bundles of merchandise may have been so carried, and the same might doubtless be said in respect to sums of money, large and small, carried upon the person, or in the trunk of the passenger, beyond what was needed for his personal expenses. Such cases might well be regarded as merely for the convenience of the passenger; and, in the absence of any proof of reward,

would afford no evidence of the assumption of the obligation of a common carrier of such goods by the passenger train.

The rules announced in the posters and tickets, so far as they bear upon the defendants' liability in this case, accord with the rules of the common law, and therefore are not material to be considered in the present aspect of the case. Had there been evidence from which the jury might legally infer a contract different from the one implied by law, or stated in these rules, then, as matter of evidence, these papers might perhaps have been weighed, if brought to the knowledge of the plaintiff, upon the question whether a new and different contract existed or not. But it is urged that, in any view that may be taken, the corporation is liable for gross negligence in respect to the bundle; and of this we think there can be no doubt, if it was received into its possession; for this is held to be the law in respect to the lowest species of bailment, as in the case of a gratuitous depositary. *Smith* v. *Nashua & Lowell Railroad*, 27 N. H. 86, 91, 98, and so in *Coggs* v. *Bernard*. In the case before us the evidence was that the bundle with the trunk was deposited by the plaintiff on the platform where baggage to go upon the train is usually deposited, just before the cars arrived, and was marked "23," the mark which the baggage-master puts upon baggage to be left at the Dover station. Upon this evidence we think the jury might have found that the bundle was received by the defendants, and marked to be carried to Dover; and especially, as the evidence went to show that the trunk which was with it was actually put aboard and carried to Dover on the same train with the plaintiff. On arriving at Dover search was made for the bundle by the plaintiff, but it could not be found, and upon notifying the baggage-master and station agent at Dover and Newmarket, due search was made for it, but it was never found. Upon this evidence the jury might legally have found that the bundle was not put aboard at Newmarket by the omission of the defendants' servants; or that, being put aboard, it was mislaid and not taken out at Dover, and so lost. In either case it would be for the jury to say whether there was gross negligence or not; and had they found that there was, the verdict could not have been disturbed, although the evidence might be regarded as slight. The question indeed is peculiarly within the province of the jury; and the court could not say that there was no evidence of negligence, nor that, if there was negligence, it was not such negligence as to charge the defendants.

It is also contended by the plaintiff's counsel that the manner of the loss not having been shown, the legal inference is, that it was caused by the negligence or fraud of the defendants. But holding as we do that in respect to the merchandise the defendants are not to be regarded as carriers for hire, but nothing more than bailees without reward, we are not prepared to assent to the doctrine that, from the fact of the loss, is to be inferred such negligence as would make the bailees liable. *Robinson* v. *Railroad*, 7 Gray 92. It is not necessary, however, to settle this question now, as, independent of such inference, we think there was evidence upon which the jury might have charged the defendants.

The only remaining question is, whether, in a suit by husband and wife upon a cause of action accruing to the wife before marriage, the wife is a competent witness for the plaintiffs. The suit is to recover damages for the loss of some merchandise of the wife; and in case of recovery the husband might reduce the fruits of the judgment to possession, although, if he die before, the right would survive to the wife. By our statute of 1857 (ch. 1952) the objection arising from interest, whether as a party, or otherwise, is wholly removed; it having been provided that no person shall be excused or excluded by reason of interest in the event of the suit as a party or otherwise; so that the question is, whether the removal of the disqualification of interest will affect the competency of the husband and wife to testify for or against each other in civil causes; and if not, whether, in the case before us, the wife must be deemed to have been called to testify for or against her husband, in a sense that ought to have excluded her. It is quite clear that only the disqualification of interest is removed by the statute referred to; and it is equally clear that, independent of the objection of interest, the husband and wife can not in general testify for or against each other. This is established by the well considered case of *Kelley* v. *Proctor*, 41 N. H. 139, which places the exclusion of the husband and wife upon grounds of public policy; and the same doctrine is fully recognized in *Breed* v. *Gove*, 41 N. H. 452. In Co. Litt. 6, b, it is laid down that " a wife can not be produced either against or for the husband *qua sunt duæ animæ in carne una ;* and it might be cause of implacable discord and dissention between the husband and the wife, and a means of great inconvenience." This ground of exclusion is recognized in *Kelley* v. *Proctor*, and *Breed* v. *Gove*, and the cases there cited; and in *Pillow* v. *Bushnell*, 5 Barb. 156; *Hasbrouck* v. *Vandervoost*, 4 Sandf. 596, and *Hasbrouck* v. *Vandervoost*, 5 Seld. 153. The rule, then, is founded upon enlightened views of public policy, which regards as of vital importance the preservation of domestic peace and harmony, and the promotion of the unreserved confidence between the husband and wife which the sanctities of that relation require. As, therefore, they can not be permitted to testify against each other, neither can they testify for each other, because it would not only be unjust, as to third persons, that they should be at liberty to testify for, and not compellable to testify against each other; but it would be practically impossible to enforce such a rule. Without stopping, then, to inquire whether, in a given case, the admission of the husband or wife to testify would in fact be attended with the mischiefs described, such as the violation of conjugal confidence, the law has laid it down as a general principle, that they can not testify for or against each other.

In the case before us, the suit is brought by the husband and wife upon a cause of action which accrued to the wife before marriage, and the husband is not only liable for costs in case the defense prevails, but, in the event of a recovery by the plaintiffs, he may reduce the fruits of the judgment to possession. Under these circumstances we think that the wife was not a competent

witness, because, within the meaning of the rule, she was called to testify for her husband, and her competency to do so was in no way affected by the statute of 1857, the question in truth being whether or not, at common law, she was admissible in a case like this.

Under the English statutes of 6 and 7 Vict., and 14 and 15 Vict., which in substance are like our own, it has been decided that the husband and wife are not competent witnesses for or against each other. *Stapleton* v. *Crafts*, 18 A. & E. (N. S.) 367; *Alcock* v. *Alcock*, 12 E. L. & E. 354, in Chancery; *Barbat* v. *Allen*, 7 Exch. 609.

By the New-York code of procedure, the party to a suit is authorized to call upon the opposite party to testify; and yet, although the terms are general, and embrace the husband, yet it is held that the wife can not be compelled to testify against the husband. *Erwin* v. *Smaller*, 2 Sandf. 340. So in a suit by husband and wife for the assault and battery of the wife, it was held that the defendant could not compel her to testify. *Pillow* v. *Bushnell*, 5 Barb. 156. In *Macondray* v. *Wardle*, 26 Barb. 612, where the suit was to compel the application of certain lands bought in the name of the wife to the payment of the husband's debts, upon the ground that the conveyance to her was to defraud his creditors, it was held that the wife was not competent to prove such fraud. In *Burrell* v. *Bell*, 3 Sandf. Ch. 15, it was held that the husband could not be a witness in favor of his wife's trustee in a suit respecting her separate estate, although he had no interest in the subject, and this on the ground of public policy. The same doctrine was held in *Hasbrouck* v. *Vandervoost*, 4 Sandf. 596, and same case, 5 Seld. 153; Where the husband and wife are sued for materials furnished the wife, the wife can not be examined as a witness against her husband. *Maine* v. *Stephens*, 4 E. D. Smith 86. See, also, *Dwelly* v. *Dwelly*, 46 Me. 377. In the case before us the husband being entitled to take the fruits of any judgment that might be recovered, and being liable to costs, is clearly a party to the suit, and cases cited from New-York of suits by the trustees of the wife respecting her separate estate, and a suit by the husband and wife for the battery of the wife, are strongly in point, and there must be a

*New trial.*